## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| In re: | ) | |
| | ) | **Case No.  18-60521** |
| **FAMILY PHARMACY, INC., et al.,** | ) | **(Joint Administration)** |
| | ) | **Chapter 11** |
| Debtors. [1] | ) | |

### ORDER APPROVING (A) THE SMITH MANAGEMENT SERVICES, LLC ASSET PURCHASE AGREEMENT, (B) AUTHORIZING (I) SALE OF SUBSTANTIALLY ALL OF THE ASSETS OF THE DEBTORS OUTSIDE THE ORDINARY COURSE OF BUSINESS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, AND (II) ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO PURCHASER AND ESTABLISHING CURE AMOUNTS WITH RESPECT THERETO, AND (C) GRANTING RELATED RELIEF

THIS MATTER came before the Court upon the motion dated May 7, 2018, of the above-captioned debtors and debtors-in-possession (the "**Debtors**"), seeking an Order (1) Approving Auction and Bidding Procedures; (2) Approving Breakup Fee and Reimbursable Expenses; (3) Prescribing Manner of Notice; and (4) Authorizing Sale of Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, Subject to Higher or Better Offers [Docket No. 47] (the "**Sale Motion**").  The Sale Motion seeks entry of a combined order under 11 U.S.C. §§ 105, 363, and 365 and Rules 2002, 6004, 6006, 9014, and 9015 of the Federal Rules of Bankruptcy Procedure ("**Bankruptcy Rules**") (A) approving the Asset Purchase Agreement (the "**APA**") by and between the Debtors and Smith Management Services, LLC (the "**Buyer**") or its designees

---

[1]      The Debtors in these proceedings and the last four digits of each Debtor's federal taxpayer identification number are as follows: Family Pharmacy, Inc. (5595); Family Pharmacy of Missouri, LLC (6899); HealthTAC Logistics, LLC (2879); Family Property Management, LLC (2908); and Family Pharmacy of Strafford, Inc. (5943).

(the "**Ultimate Purchasers**") as identified at or before Closing[2] (as defined in the APA), that was

presented to the Court at the Sale Hearing and is attached to this Sale Order as **Exhibit A** (B)

authorizing (i) the sale of substantially all of the Debtors' assets as more specifically defined in

the APA, free and clear of liens, claims, interests, and encumbrances (the "**Assets**") to Buyer (or

Ultimate Purchaser, as the case may be) and (ii) the assumption and assignment to Buyer (or

Ultimate Purchaser, as the case may be) of certain executory contracts and unexpired leases in

connection with the sale as identified in the APA, and subject the Buyer's further exercise of the

Designation Rights (defined below) as to the executory contracts identified on Schedule 1.7(a) to

the APA (collectively, the "**Assigned Contracts**") and fixing cure amounts for the Contracts under

11 U.S.C. § 365; and (C) granting related relief.  Notice of the Sale Motion and related procedures

has been served by the Debtors on those parties required to receive notice by the Bidding

Procedures Order (as defined below), and the Court scheduled and conducted a hearing on the Sale

Motion at 1:30 p.m. (Prevailing Local Time) on August 7, 2018 (the "**Sale Hearing**").

The Debtors have certified that notice of the Sale Hearing was provided by proper service

in accordance with the Bidding Procedures Order (as defined below), the procedures to be followed

in conducting the sale, and of the Sale Motion; the Court having found that the service of the

Bidding Procedures Order, the Sale Motion, and the notice of the Sale Hearing is sufficient under

the circumstances for the purposes of Bankruptcy Rules 2002, 6004, and 6006; that notice is not

required under 11 U.S.C. § 363(b)(2), and that no other or further notice is necessary; the Court

having considered the presentations and proffers by counsel, the evidence submitted, and

---

[2]     All capitalized terms not otherwise defined in this order (the "**Sale Order**") shall have the same meaning ascribed to them in the APA or the Sale Motion, as applicable.  Prior to the Closing, Buyer shall be permitted to take a count of the inventory in compliance with applicable legal requirements.

KCP-8393336-9

testimony on the record at the Sale Hearing, and all objections to the Sale Motion, and the Court

being fully advised in the premises and having considered the relief sought in the Sale Motion and

having found good cause to grant the relief requested thereby, and after due deliberation and good

and sufficient cause existing:

**THIS COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND**

**CONCLUSIONS OF LAW:**

A.      This Court has jurisdiction over the Sale Motion and the transactions contemplated

by the Sale Motion pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding

under 28 U.S.C. § 157(b)(2)(A) and (N).  The statutory predicates for relief include 11 U.S.C. §§

105(a), 363, and 365 and Bankruptcy Rules 2002, 6004, 6006, and 9006.

B.      The findings and conclusions set forth in this Sale Order constitute the Court's

findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this

proceeding by Bankruptcy Rule 9014.  To the extent that any of the following findings of fact

constitute conclusions of law, they are adopted as such.

C.      The Debtors entered into the APA made effective as of May 7, 2018 by and among

Smith Management Services, LLC, Family Pharmacy, Inc., Family Pharmacy of Strafford, Inc.,

Family Pharmacy of Missouri, LLC, Family Property Management, LLC, and HealthTac

Logistics, LLC.  The APA was attached as an exhibit to the Sale Motion and was authorized and

assumed pursuant to the Bidding Procedures Order (as defined below).  A First Amendment to the

APA was executed by the Debtors, the Morrises, and the Buyer subsequent to May 7, 2018.

D.      The Debtors entered into the APA subject to higher and better offers.  Competing

bids were received for the Assets and the Debtors conducted an auction for the Assets commencing

on August 3, 2018 (the "**Auction**") in accordance with bidding procedures (the "**Bidding**

KCP-8393336-9

**Procedures**") set forth in an order approved by the Court dated May 29, 2018 [Docket No. 111] (the "**Bidding Procedures Order**").  All bidders that participated in the Auction were Qualified Bidders with Qualified Bids submitted for the Assets (as such terms are defined in and construed under the Bidding Procedures and Bidding Procedures Order).  At the Auction, the Buyer submitted the final bid as represented in the APA, representing the highest and best offer received for the Assets.  The Debtors believe the purchase price provided in the APA for the Assets represents the highest and best offer for the Assets.  The Debtors, the Morrises, and the Buyer are in the process of preparing a Second Amendment to the APA to comport the APA to the results of the Auction.

E.       The Debtors provided interested parties (including all parties asserting claims or interests in the Assets, if any) with proper notice of the Sale Motion, the Sale Hearing, the Auction, the assumption and assignment of the Assigned Contracts, and the fixing of any cure amounts, in accordance with 11 U.S.C. §§ 102(1), 105(a), 363 and 365, Fed. R. Bankr. P. 2002(a), 6004(a) and 6006(c), and the Bidding Procedures Order.  The Debtors provided notice of the Sale Hearing to all of their employees.  The notice identified in this Sale Order is due, proper, and sufficient notice to provide all affected parties adequate opportunity to determine that their rights are to be affected and afforded such parties an opportunity to object to the sale of the Assets at the Sale Hearing.

F.       The Debtors marketed the Assets and conducted the sale process in compliance with the Bidding Procedures Order, the Bidding Procedures, the Bankruptcy Code, and all other orders entered in these bankruptcy cases.  Bidding on the Assets and the Auction were conducted in a non-collusive, fair, and good faith manner.  The Debtors have given all interested parties a reasonable opportunity to make a highest or otherwise best offer for the Assets.  In their sound

KCP-8393336-9

business judgment, the Debtors determined that the purchase price provided in the APA was the highest or otherwise best offer for the Assets.

G.      The APA represents the highest and best offer for the Assets[3], and the purchase price for the Assets in the amount of $13,975,000 in cash plus a credit bid of $2,000,000 (the "**Purchase Price**") is (i) fair and reasonable, (ii) will provide a greater recovery for the Debtors' creditors than would be provided by any other practical available alternative, and (iii) constitutes reasonably equivalent and fair market value under the Bankruptcy Code and applicable non-bankruptcy law.

H.      A reasonable opportunity to object or to be heard regarding the relief requested by the Sale Motion has been afforded to all interested persons and entities, including (i) all parties that have been previously contacted in connection with the marketing and sale process and other potential qualified bidders known to Debtors; (ii) the Office of the United States Trustee; (iii) all creditors holding a lien in the Assets or secured claim; (iv) all governmental agencies required to receive notice of proceedings under the Bankruptcy Rules and any local bankruptcy rules; (v) all non-Debtor parties to executory contracts and unexpired leases; and (vi) all entities who have requested notice pursuant to Bankruptcy Rule 2002.  Notice of the proposed sale of the Assets has also been provided to each employee of the Debtors.  Further, a reasonable opportunity has been afforded any interested person or entity to make a higher and better offer to purchase the Assets upon the terms and conditions and within the time period set forth in the Bidding Procedures Order.  Further, no notice is required to be given under 11 U.S.C. § 363(b)(2) because Section 7A of the Clayton Act does not apply to the sale of the Assets.

---

[3]      The Buyer's winning bid excluded the Ozark vacant lot from the Assets purchased under the APA.

KCP-8393336-9

I.     The Debtors (i) have full corporate power and authority to execute and consummate the APA attached as **Exhibit A**, and all related documents, and the sale of the Assets and assumption and assignment of the Assigned Contracts has been duly and validly authorized by all necessary corporate action of the Debtors; and (ii) no consents or approvals, other than those expressly provided for in the APA, are required to consummate the transactions contemplated by the APA.

J.     The Debtors (i) own the Assets which are the subject of the proposed sale; (ii) possess good, valid, and marketable title to such Assets; and (iii) have the ability to convey the Assets to Buyer and, as applicable, Ultimate Purchasers on the terms and conditions of this Sale Order and the APA.

K.     Approval of the relief requested by the Sale Motion and consummation of the sale of the Assets at this time are in the best interests of the Debtors, their creditors, all other parties in interest, and of the Debtors' respective bankruptcy estates.  The Court finds that the Debtors have articulated good and sufficient business justification for the sale of the Assets prior to filing a plan of reorganization pursuant to 11 U.S.C. § 363(b), including arm's length negotiation and "best price" after out-of-court marketing efforts.  Additionally, the Court incorporates its findings of fact made on the record at the conclusion of the Sale Hearing as reasons why the Sale Motion should be granted.

L.     Neither the Buyer nor any of its affiliates nor the Ultimate Purchasers nor their affiliates is an "insider" of any of the Debtors, as that term is defined in 11 U.S.C. § 101(31).

M.     The Debtors and the Buyer and applicable Ultimate Purchasers proposed, negotiated, and entered into the APA, without collusion, in good faith, and at arm's-length

KCP-8393336-9

bargaining positions.  Neither the Debtors nor the Buyer nor the Ultimate Purchasers have engaged in any conduct that would cause or permit the APA to be avoided under 11 U.S.C. § 363(n).

N.       The Buyer (or applicable Ultimate Purchaser, as the case may be) is a "good faith" purchaser within the meaning of 11 U.S.C. § 363(m) and, as such, is entitled to the protections afforded by that Bankruptcy Code section.

O.       This Sale Order is a final order and enforceable upon entry.  To the extent the necessary under Bankruptcy Rules 5003, 9006, 9014, 9021, and 9022, and due to the high likelihood of a very rapid decline in the value of the Assets, there is no just reason for the delay in the implementation of this Sale Order, and therefore the fourteen-day stay imposed by Bankruptcy Rules 6004(h) and 6006(d) shall not apply to the transactions contemplated by the APA and this Sale Order, and Buyer (or applicable Ultimate Purchaser, as the case may be) will be acting in "good faith" within the meaning of 11 U.S.C. § 363(m) in immediately closing the transactions contemplated by the terms of this Sale Order following entry of this Sale Order, including without limitation the assumption and assignment of Assigned Contracts.  To the extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Sale Order.

P.       The Debtors' transfer of the Assets to the Buyer (or Ultimate Purchaser, as applicable) pursuant to the APA is and will be a legal, valid, and effective transfer of the Assets. The Debtors' transfer of the Assets and the Assigned Contracts to the Buyer (or Ultimate Purchaser, as applicable) indefeasibly vests the Buyer (or Ultimate Purchaser, as applicable) with

KCP-8393336-9

good and valid title in and to the Assets free and clear of any Claims[4] except the Permitted Liens

(as such term is defined in the APA), if any, as defined in the APA.  Any Claim that is not one of

the Permitted Liens, in or against the Debtors, their insiders, the Assets, or the Contracts will attach

to the net proceeds of the sale to the same extent, validity, and priority such Claims had against

the Debtors, the Assets or Assigned Contracts prior to the Closing Date, subject to any rights,

claims, defenses, and objections of the Debtors and all interested parties with respect to such

Claims.

Q.    The Debtors may sell and transfer the Assets in accordance with the terms and

conditions of the APA free and clear of all Claims (except the Permitted Liens) because any entity

with any Claims in the Assets to be transferred (i) has consented to the sale (including the

assumption and assignment of the Contracts) or is deemed to have consented to the sale; (ii) could

be compelled in a legal or equitable proceeding to accept money satisfaction of such Claims; or

(iii) otherwise falls within the provisions 11 U.S.C. § 363(f) and, therefore, in each case, one or

more of the standards set forth in 11 U.S.C. § 363(f)(1)-(5) has been satisfied with respect to such

Claim.  Holders of Claims, if any, who did not object, or who withdrew their objections to the Sale

Motion, are deemed to have consented to the sale pursuant to 11 U.S.C. § 363(f)(2).

R.    The Debtors will cause the proceeds from the sale to be paid in accordance with the

terms of the Final Order (I) Authorizing Debtors to Obtain Post-Petition Financing from JM Smith

Corporation, as Lender, Pursuant to Section 364 of the Bankruptcy Code, (II) Granting Liens and

---

[4]    As used in this Sale Order, the term "**Claim or Claims**" shall mean all liens, claims (as such term is defined in the Bankruptcy Code), interests, and encumbrances, charges, defenses, off-sets, recoupments, and interests thereon and there against of whatever type or description, including, without limitation, restrictions on or conditions to transfer or assignment, liens, mortgages, security interests, pledges, hypothecations, control agreements, equities and other claims and interests.

KCP-8393336-9

Super-Priority Claims, and (III) Authorizing Debtors to Use Cash Collateral and Grant of Adequate Protection entered May 23, 2018 (the "**Final Financing Order**") [Docket No. 90], and the **"DIP Facility Credit Agreement"** (as such term is defined in the Final Financing Order).

S.    The Debtors' assumption and assignment of the Assigned Contracts in connection with the sale of the Assets contemplated under the APA is (i) an exercise of their sound business judgment, and (ii) in the best interests of the Debtors' respective bankruptcy estates and creditors.

T.    The Debtors have provided all counter-parties to the Contracts with adequate assurance that they will promptly cure any defaults under the Assigned Contracts pursuant to 11 U.S.C. § 365(b)(1).

U.    Pursuant to 11 U.S.C. § 365 and Fed. R. Bankr. P. 6006, the amounts set forth on **Exhibit B**, if any, constitute all amounts due and owing under the Contracts and will be fixed and allowed for the Contracts (the "**Cure Amounts**").  No other amounts are due and owing by the Debtors under the Contracts.  The Debtors or Buyer (as set forth in the APA) will pay the Cure Amount, if any, in accordance with the terms and provisions of the APA at Closing.  Upon payment of the Cure Amounts, all defaults, if any, under the Assigned Contracts will be deemed cured.

V.    The Buyer (or Ultimate Purchaser, as applicable) has provided the counter-party to each of the Assigned Contracts with adequate assurance of future performance within the meaning of 11 U.S.C. §§ 365(b)(1)(C), 365(b)(3) and 365(f)(2)(B).

W.    No default of the type described in 11 U.S.C. § 365(b)(2)(D) exists under the Contracts.

X.    Except as expressly set forth in the APA, the Buyer and any Ultimate Purchaser will have no responsibility for any debts, liabilities, obligations, commitments, responsibilities, or other Claims of any kind or nature whatsoever, whether known or unknown, contingent or

9

otherwise, existing as of the date hereof or hereafter arising, of against, or by the Debtors or any

of their property, any affiliates of the Debtors, or any other person, including by reason of such

sales, transfers, rejections, assignments, and/or solicitations under the laws of the United States,

any state, territory, or possession thereof, or the District of Columbia applicable to such

transactions by virtue of the transfer of the Assets and the assumption and assignment of the

Assigned Contracts to the Buyer and/or any Ultimate Purchaser.

Y.    The Buyer and applicable Ultimate Purchaser will not be deemed, as a result of any

action taken in connection with the purchase of the Assets or the assumption and assignment of

the Assigned Contracts to (i) be a successor to the Debtors (other than with respect to the

obligations arising under the Assigned Contracts from and after the Closing); or (ii) have, *de facto*

or otherwise, merged with or into the Debtors.  The Buyer (and any Ultimate Purchaser) is not

acquiring or assuming any liability, warranty, or other obligation of the Debtors, except as

expressly set forth in the APA or in any of the Assigned Contracts.

Z.    A sale on the terms and conditions of the APA, including, without limitation, entry

of an order providing a sale free and clear of Claims and providing that the Buyer (and any

applicable Ultimate Purchaser) is not a successor of any of the Debtors, is consistent with the

Bankruptcy Code and promotes the policies of the Bankruptcy Code to maximize the value of the

Assets.  Absent such finding, the Buyer (and/or Ultimate Purchasers) would have been unwilling

to pay the Purchase Price for the Assets and Contracts as provided for in the APA.

AA.    To the extent applicable, the Debtors have complied with the applicable

requirements of 29 U.S.C. §§ 2101, *et seq*. (the "**WARN Act**").

BB.    The Court's approval of the APA is in the best interests of the Debtors, their

respective bankruptcy estates, and their respective creditors.

KCP-8393336-9

CC.     Accordingly, based on the Court's findings and conclusions,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.      The Bidding Procedures Order is hereby ratified and reaffirmed in all respects.

2.      The Sale Motion is GRANTED as modified by this Sale Order.

3.      All objections to the entry of this Sale Order or to the relief requested in the Sale

Motion, including any objection to the proposed Cure Amount, that have not been withdrawn,

waived or settled at or before the Sale Hearing, are denied and overruled on the merits.

4.      The sale of the Assets pursuant to the terms of this Sale Order and the APA is

hereby authorized and directed under 11 U.S.C. § 363(b).  The APA and all ancillary documents

and all of the terms and conditions thereof are hereby approved in their entirety.  Pursuant to

11 U.S.C. §§ 105(a) and 363(b), the Debtors are authorized and directed (subject to applicable

Closing conditions set forth in the APA), to consummate the sale approved by this Sale Order,

including transferring and conveying the Assets to the Buyer (or Ultimate Purchaser, as applicable)

pursuant to and in accordance with the terms and conditions of the APA and this Sale Order.

5.      Upon Closing, subject to the retention of the Designation Rights (as defined below)

by the Buyer, the Debtors are authorized and directed, in accordance with 11 U.S.C. §§ 105(a),

363, and 365, to assume and assign the Assigned Contracts to Buyer (or Ultimate Purchaser, as

applicable).

6.      Pursuant to the terms of the APA and this Sale Order, Buyer shall have the right to

direct the Debtors to assume and assign or to reject, at Buyer's sole option, any Contracts, and

Debtors are authorized and directed to file and prosecute a motion or motions to effectuate such

assumptions and assignments or rejections (the "**Designation Rights**"); *provided, however*, that

Buyer shall be entitled to exercise Designation Rights from the date that is the later of (x) the

11

Closing Date or (y) the date on which the Debtors have fulfilled their respective obligations under the Operations Transfer Agreement (the "**Election Date**"); *provided further, however*, that Buyer may notify Debtors in writing of its decision to assume and assign or reject any Contracts before the Election Date (the "**Supplemental Contract Notice**") and if Buyer has not submitted to the Debtors a Supplemental Contract Notice with respect to a particular Contract as of the expiration of the Election Date, then the Debtors shall reject such Contracts.  Buyer may revoke a Supplemental Contract Notice (in its entirety or in part) at any time prior to the entry of an order approving the requested assumption or rejection of the subject Contracts.

7.    The Debtors have satisfied the requirements of 11 U.S.C. §§ 365(b)(1) and (3) and 365(f)(2).

8.    The Assigned Contracts will be assumed and assigned to the Buyer (or Ultimate Purchaser, as applicable) in accordance with their respective terms.  The Contracts will remain in full force and effect notwithstanding any provision in any such Contracts to the contrary (including provisions of the type described in 11 U.S.C. §§ 365(b)(2), (e)(1) and (f)(1)) which prohibit, restrict or condition such assignment or transfer).  All non-Debtor parties to the Leases are deemed to have consented to the assumption and assignment, if consent was not otherwise obtained in accordance with the APA.

9.    Pursuant to 11 U.S.C. § 363(b), the Debtors are authorized, directed, and empowered to consummate and implement fully the APA, together with all additional instruments and documents that may be necessary to implement the APA.  The Debtors are authorized and directed to take all actions necessary for the purpose of assigning, transferring, granting, conveying, and conferring the Assets and the Assigned Contracts to Buyer (or, as applicable, an Ultimate Purchaser).

KCP-8393336-9

10.    The Buyer shall not designate an Ultimate Purchaser which is an Insider or an Affiliate of an Insider of the Debtors (as such terms are defined by the Bankruptcy Code).

11.    For the reasons stated in this Sale Order, closing on the transactions contemplated by this Sale Order and as set forth in the APA shall be allowed to occur immediately.

12.    Any agreements, documents, or other instruments executed in connection with the APA may be modified, amended, or supplemented by the parties in accordance with the terms of the APA without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' respective bankruptcy estates.

13.    The transfer of the Assets by the Debtors to the Buyer (or applicable Ultimate Purchaser) upon Closing shall be free and clear of all Claims (except for the Permitted Liens) pursuant to 11 U.S.C. §§ 105(a) and 363(f).  All non-assumed Claims, if any, will attach to the proceeds of the sale contemplated by the APA to the same extent, validity, and priority that such Claims had against the Assets immediately prior to Closing, subject to any rights, claims, defenses, and objections of the Debtors and all interested parties with respect to such Claims.  For purposes of the term "Permitted Liens", Buyer has not consented to any such Liens referenced in clause (b) of the definition of such term.  For the avoidance of doubt, the Senior Secured Claims of the Senior Secured Claim Holders (as each term is defined in this Sale Order) shall attach to the proceeds of the sale to the same extent, validity, and priority as existed as of the Petition Date until the entry of a separate Order of this Court determining the extent, validity, and priority of such Senior Secured Claims and directing the payment of the allowed amount of same as contemplated by paragraph 31 of this Sale Order.

14.    The Buyer (or applicable Ultimate Purchaser) provided the Debtors with reasonably equivalent value and fair consideration for the Assets under the Bankruptcy Code and applicable

KCP-8393336-9

non-bankruptcy law, and the Purchase Price for the Assets was not controlled by an agreement among any potential bidders for the sale of the Assets.  For those reasons, the transfer of the Assets may not be avoided under 11 U.S.C. § 363(n).

15.     The Cure Amount for the Contracts is fixed in the respective amounts set forth on **Exhibit B**, which is consistent with the Cure Notice (defined below), as revised in **Exhibit B**.  As more fully set forth in the *Notice Regarding (I) Executory Contracts and Unexpired Leases, (II) Proposed Cure Amounts, and (III) Related Procedures* filed in these bankruptcy cases on June 8, 2018 [Docket No. 130] (the "**Cure Notice**"), any party to a Contract that was <u>not</u> set forth on Exhibit A to the Cure Notice, was required to object to (I) the assumption of a Contract by the Stalking Horse Bidder, including (a) the ability of the Debtors to provide adequate assurance of future performance under such Contract, or (b) $0.00 being fixed as the Cure Amount with respect to such Contract, or (II) the assignment of such Contract to the Stalking Horse Bidder, No such objections were filed as required by the Cure Notice.  As a result, the Cure Amount of any other parties to a Contract other than as set forth on **Exhibit B** hereof or otherwise in this Sale Order shall be $0.00.   All defaults, claims or other obligations of the Debtors arising or accruing under each of the Contracts, if any, prior to assumption (without giving effect to any acceleration clauses or any default provisions of the kind specified in 11 U.S.C. § 365(b)(2)) will be cured by the Debtors in accordance with the APA, by paying the Cure Amount from the proceeds of the sale, subject to the Cure Cap.  No other or further monetary amounts or obligations are due or existing under the Contracts by the Debtors, whether pursuant to 11 U.S.C. § 365(b)(1) or otherwise.  If any of the Contracts are assumed, or assumed and assigned, pursuant to this Sale Order, or the Designation Rights, the Debtors will pay any Cure Amount from the proceeds of the sale in

14

accordance with the terms and provisions set forth in **Exhibit B**, in accordance with the APA, also subject to the Cure Cap.

16.     Subject to the Designation Rights, effective as of the Closing Date and upon payment of the Cure Costs, each non-Debtor party to the Contracts is hereby forever barred, estopped, and permanently enjoined from asserting against the Buyer (or applicable Ultimate Purchaser, as the case may be) or its property any default or breach under such Contracts; any claim of lack of consent or any other condition to assignment thereof; or any counterclaim, defense, setoff, right of recoupment, or any other claim asserted or assertable against the Debtors, arising under or related to such Contracts and existing as of the Closing Date, except to the extent otherwise agreed to by Buyer (or applicable Ultimate Purchaser, as the case may be) as expressly provided for in definitive documentation, if any, executed by Buyer (or applicable Ultimate Purchaser, as the case may be) in connection therewith.

17.     Pursuant to 11 U.S.C. § 365(k), upon the assumption and assignment of the Assigned Contracts to the Buyer (or applicable Ultimate Purchaser, as the case may be), (a) the Debtors and their bankruptcy estates are relieved from any and all liability for any default or breach of the Assigned Contracts occurring after assignment to the Buyer (or applicable Ultimate Purchaser, as the case may be), and (b) the Buyer (or applicable Ultimate Purchaser, as the case may be) is responsible for any and all claims and obligations under the Assigned Contracts occurring or arising after the assignment.  The Buyer shall not be responsible for such Contracts assigned to an Ultimate Purchaser, nor shall an Ultimate Purchaser be responsible for such Contracts assigned to Buyer or another Ultimate Purchaser.

KCP-8393336-9

18.     Subject to the terms of this Sale Order and the APA, the Buyer (or Ultimate Purchaser, as applicable) assumes all rights and obligations of the Debtors under the Assigned Contracts effective as of the Closing Date, subject to the terms of the APA.

19.     All non-Debtor parties to the Contracts are forever enjoined and estopped from contesting the Cure Amounts and from asserting any default against the Buyer (or applicable Ultimate Purchaser) which existed as of the date of the Sale Hearing.

20.     Upon the Debtors' assignment of the Assigned Contracts to the Buyer (or applicable Ultimate Purchaser), no default will exist under the Assigned Contracts.  Upon entry of this Sale Order and the assumption and assignment of the Assigned Contracts, the Buyer (or Ultimate Purchaser, as applicable) is deemed to be in compliance with all terms and provisions of the Assigned Contracts.

21.     All entities that are presently, or upon Closing may be, in possession of some or all of the Assets are directed, promptly upon demand, to surrender possession of the Assets to the Debtors for delivery to the Buyer (or applicable Ultimate Purchaser).  Prior to or upon the Closing, each of the Debtors' creditors is authorized and directed to execute such documents and take all other actions as may be necessary to release its Claims in the Assets (except for the Permitted Liens), if any.  In the event any creditor fails to release its Claims in the Assets, the Debtors and the Buyer (or applicable Ultimate Purchaser) are each authorized to take any action necessary to do so, including executing and filing any statements, instruments, releases and other documents on such creditor's behalf.  The Buyer (or applicable Ultimate Purchaser) is also authorized to file, register or otherwise record a certified copy of this Sale Order.  Once this Sale Order is so filed, registered, or otherwise recorded, the Sale Order constitutes conclusive evidence of the release of all Claims against the Assets as of the Closing.

KCP-8393336-9

22.     The Buyer (and Ultimate Purchasers) acted in "good faith" in purchasing the Assets and the Assigned Contracts under APA as that term is used in 11 U.S.C § 363(m).  For that reason, any reversal or modification of the Sale Order on appeal will not affect the validity of the sale of the Assets or the assignment of the Assigned Contracts to the Buyer (or applicable Ultimate Purchaser) unless such authorization is duly stayed pending such appeal.

23.     The Debtors' transfer of the Assets to Buyer (or applicable Ultimate Purchaser) and performance under the Assigned Contracts will not result in (a) the Buyer (or applicable Ultimate Purchaser) having any liability for any Claim (except for the Permitted Liens) against the Debtors or against an insider of the Debtors or (b) the Buyer (or applicable Ultimate Purchaser) having any liability to the Debtors except as expressly stated in the APA and this Sale Order.

24.     The Buyer (and its affiliates, successors or assigns) (and the Ultimate Purchasers (and their respective affiliates, successors or assigns)) will have no responsibility for any liability of the Debtors arising under or related to the Assets, including the Assigned Contracts (other than the Permitted Liens as set forth in the APA).

25.     The transfer of the Assets to, and the assumption and assignment of the Assigned Contracts to, Buyer (or Ultimate Purchaser, as applicable) on the Closing Date shall be free and clear of any and all Claims, having arisen, existed or accrued prior to and through the Closing Date, whether direct or indirect, monetary or non-monetary, arising at law or in equity, contract or tort, absolute or contingent, matured or unmatured, voluntary or involuntary, liquidated or unliquidated, of, by, or against Debtors, insiders of the Debtors, the Assets or the Assigned Contracts and further including, without limitation, the following:

> a.     Claims arising through the Closing Date (as defined in the APA), if any, of any governmental unit for taxes; any Claim arising through the Closing Date relating to any executory contract or lease (whether of personal or real property, or otherwise) affecting or in any way related to the Assets, including without

17

limitation, Claims of Debtors' vendors, suppliers, and/or customers arising from Debtors' failure to perform their obligations to said parties whether such failure occurred prior to or on the Closing Date or whether such failure arose as a result of a Buyer's (or Ultimate Purchaser's) election or before the Closing Date not to accept and/or perform such vendors', suppliers' or customers' account and/or orders subsequent to the Closing Date;

b.      Any Claim arising through the Closing Date relating to work performed by any contractor or materialman that would give rise to a mechanic's lien, or similar Claim, against the Assets;

c.      Any Claim arising through the Closing Date for attorney's fees or other costs or expenses claimed by lessors, lessees, licensees or any other non-Debtors parties to executory contracts or any lease;

d.      Any Claim arising through the Closing Date based on acts or omissions of the Debtors arising in tort, contract, including collective bargaining agreements, or otherwise, including, without limitation, Claims for successor liability; and

e.      Any Claim arising through the Closing Date relating to liability arising under federal, state or local revenue, tax, products liability, labor, employment, including without limitation the ADA, FMLA, USERRA, WARN Act, Title 7, FLSA, and 42 U.S.C. § 1981, worker compensation or environmental laws, rules or regulations or with respect to Debtors' liability as distributor or a retailer.

f.      Any Claim by any person or entity relating to any health or welfare benefit for the benefit of any current or former employee of Debtors or their dependents or beneficiaries.

g.      Any Claim by an employee of the Debtors relating to their termination by the Debtors as a consequence of this Sale Order or the transactions contemplated by the APA.

In addition, Buyer and its affiliates, successors or assigns or their respective properties (including the Assets) (and the Ultimate Purchasers, as applicable, and their respective affiliates, successors or assigns or their respective properties (including the Assets)) shall not be liable, by operation of law or otherwise, for any Claim by virtue of Buyer's (or Ultimate Purchaser's) purchase or subsequent operation of the Assets or performance under the Assigned Contracts including, without limitation, Claims of the type set forth in subparagraphs (a)-(g) hereinabove.

18

26.     All persons and entities, including without limitation, all debt security holders, equity security holders, governmental, tax, and regulatory authorities, licensees, lenders, trade and other creditors, and other present and future claimants whether or not holding Claims of any kind whatsoever against or in the Debtors or the Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Debtors, the Assets, the operation of the Debtors' businesses prior to the Closing Date, or the transfer of the Assets to the Buyer (or applicable Ultimate Purchaser, as the case may be) are hereby forever barred, estopped, and permanently enjoined from asserting against Buyer (or applicable Ultimate Purchaser, as the case may be) its successors or assigns, its property, or the Assets, such persons' or entities' Claims, except only for liabilities expressly assumed by Buyer (or applicable Ultimate Purchaser, as the case may be) under this Sale Order or the APA.

27.     Neither the purchase of the Assets by Buyer (or applicable Ultimate Purchaser) nor the subsequent operation of the Assets as pharmacies by Buyer (or applicable Ultimate Purchaser) nor the hiring of any former employees of any of the Debtors by the Buyer (or applicable Ultimate Purchaser) shall cause Buyer or its affiliates, successors or assigns or their respective properties (including the Assets) (or the Ultimate Purchasers, as applicable, or their respective affiliates, successors or assigns or their respective properties (including the Assets)) to be deemed a successor or successor in interest in any respect of the Debtors' business within the meaning of any laws, rules or regulations relating to any tax, revenue, pension, benefit, ERISA, environmental, labor, employment, products liability or other law, rule or regulation of any federal, state or local government.

KCP-8393336-9

28.     Except as provided in this Sale Order and in the APA, the sale, transfer, assignment,

and delivery of the Assets shall not be subject to any Claims of any kind or nature whatsoever,

which shall remain with, and continue to be obligations of, the Debtors.  Except as provided in this

Sale Order, all persons or entities holding any Claims against or in the Debtors or the Assets of

any kind or nature whatsoever shall be, and hereby are, forever barred, estopped, and permanently

enjoined from asserting, prosecuting, or otherwise pursuing such Claims of any kind or nature

whatsoever against the Buyer (or applicable Ultimate Purchaser, as the case may be) its property,

its successors and assigns, or the Assets with respect to any Claim of any kind or nature whatsoever

such person or entity had, has, or may have against any of the Debtors, their bankruptcy estates,

officers, directors, shareholders, or the Assets, including but not limited to: (i) from commencing,

conducting, or continuing in any manner, directly or indirectly, any suit, action or other proceeding

(including, without expressed or implied limitation, any thereof in a judicial, arbitral,

administrative or other forum) against or affecting the Buyer (or applicable Ultimate Purchaser, as

the case may be) or the Assets; (ii) from enforcing, levying, attaching (including, without

expressed or implied limitation, any prejudgment attachment), collecting or otherwise recovering

by any means or in any manner, whether directly or indirectly, any judgment, award, decree, or

other order against the Buyer (or applicable Ultimate Purchaser, as the case may be) or the Assets;

(iii) from creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any lien,

or encumbrance against the Buyer with respect to any interest in the Assets; (iv) from setting off,

seeking reimbursement of, contribution from, or subrogation against, or otherwise recouping in

any manner, directly or indirectly, any amount from the Buyer (or applicable Ultimate Purchaser,

as the case may be) or the Assets against any liability owed by the Debtors or affecting the Assets.

Following the Closing Date, no holder of a Claim against the Debtors or the Assets shall interfere

KCP-8393336-9

with the Buyer's (or applicable Ultimate Purchaser's, as the case may be) title to or use and enjoyment of the Assets based on or related to such Claim, or any actions that the Debtors may take in their respective Chapter 11 cases.

29.     Upon Closing, this Sale Order constitutes a full and complete general assignment, conveyance, and transfer of the Assets and the Assigned Contracts and/or a deed or a bill of sale transferring good and marketable title in the Assets to Buyer (or Ultimate Purchasers as applicable) on the Closing Date free and clear of all Claims (except for the Permitted Liens).  Each and every federal, state, and local governmental agency or department is directed to accept this Sale Order as such an assignment, deed, and/or bill of sale or any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA.  If necessary, this Sale Order shall be accepted for recordation on or after the Closing Date as conclusive evidence of the free and clear, unencumbered transfer of title to the Assets to Buyer or applicable Ultimate Buyer.

30.     This Sale Order is effective as a determination that any and all Claims (except for the Permitted Liens), if any, will be, and are, without further action by any person or entity, unconditionally released, discharged, and terminated with respect to the Assets and Assigned Contracts and, upon the Closing Date, that the conveyances described in this Sale Order and in the APA have been effected free and clear of all such Claims.

31.     The Debtors have not admitted the validity, priority, extent and/or amount of any secured claims (the "**Senior Secured Claims**") held by entities (the "**Senior Secured Claim Holders**") on the Assets that are senior to the secured claims held by Smith Drug Company, a division of J M Smith Corporation ("Smith") on the Assets.[5]  The Debtors shall not make any

---

[5]     Smith assigned its claim against the Debtors to the Buyer prior to the Auction.

KCP-8393336-9

distributions on account of Senior Secured Claims to any Senior Secured Claim Holders absent

either (a) separate Order of this Court or (b) a stipulation filed by and between the Debtors, the

Buyer, and the particular Senior Secured Claim Holder, provided that, such stipulation is approved

by an Order of this Court.  The Debtors shall escrow the cash portion of the Purchase Price (except

for payment of the Cure Amount) pending entry of one or more orders authorizing distributions of

the cash portion of the Purchase Price as contemplated by this Paragraph 31.   To the extent that

any portion of the cash portion of the Purchase Price is not necessary to pay any portion of any

Senior Secured Claim for any reason, such amount of the cash portion of the Purchase Price shall

be returned to the Buyer.

32.     At Closing, the Debtors are authorized to distribute the sum of $419,246.87

(the "**Broker Fee**") of the Purchase Price to Integrity Pharmacy Consultants LLC ("**Broker**"),

which acted as the broker for the sale of the Assets pursuant to the Debtors' Emergency Motion to

Employ Integrity Pharmacy Consultants LLC as Pharmacy Broker filed on May 5, 2018 [Docket

No. 72] (the "**Broker Motion**") and this Court's Order approving the Broker Motion entered on

June 4, 2018 [Docket No. 117] (the "**Broker Order**").  Consistent with the Broker Motion and the

Broker Order, the Broker Fee is a carve-out from the liens of Bank of Missouri and Cardinal Health

and, therefore, shall reduce the sum payable to them on account of their Senior Secured Claims by

the total amount of the Broker Fee (and, as between Bank of Missouri and Cardinal, the portion of

the Broker Fee allocable to each shall be determined pro rata based upon the total allowed amount

of their Senior Secured Claims).

33.     This Sale Order shall be binding upon and govern the acts of all persons or entities

including without limitation, all filing agents, filing officers, title agents, title companies, recorders

of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental

KCP-8393336-9

departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Assets.

34.    If any person or entity that has filed, whether before or after the Petition Date, judgment liens, tax liens, financing statements, mortgages, mechanic's liens, *lis pendens*, or other documents or agreements evidencing liens, claims, licenses, sublicenses, assignments, or interests with respect to the Assets shall not have delivered to the Debtors prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all liens, claims, encumbrances, licenses, sublicenses, assignments, and interests which the person or entity has with respect to the Assets or otherwise, then (i) upon request by the Buyer (or applicable Ultimate Purchaser, as the case may be), the Debtors are hereby authorized and directed to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity with respect to the Assets; and (ii) the Buyer (or applicable Ultimate Purchaser, as the case may be) is hereby authorized to file, register, or otherwise record a certified copy of this Sale Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all liens, claims, encumbrances, and interests in the Assets of any kind or nature whatsoever.

35.    This Court retains exclusive jurisdiction to (a) construe, enforce, and implement, the APA and any other agreements and instruments executed in connection with the APA, (b) compel delivery of possession of the Assets to Buyer (or applicable Ultimate Purchaser), (c) resolve any disputes, controversies or claims arising out of or relating to the Sale Order or APA, (d) protect the Buyer (or applicable Ultimate Purchaser, as the case may be) against any Claims

23

KCP-8393336-9

against the Debtors or the Assets, of any kind or nature whatsoever, and (e) interpret, implement, and enforce the provisions of this Sale Order.

36.     The terms and provisions of the APA and this Sale Order will be binding in all respects upon, and will inure to the benefit of, the Debtors, their bankruptcy estates, the Buyer and its respective affiliates, successors and assigns, (the Ultimate Purchasers, as applicable, and their respective affiliates, successors and assigns), and any affected third parties, notwithstanding any subsequent appointment of any trustee under any chapter of the Bankruptcy Code, as to which trustee such terms and provisions likewise will be binding.  Nothing contained in any plan of reorganization (or liquidation) confirmed in these bankruptcy cases, any order of confirmation confirming any plan or reorganization (or liquidation), or any subsequent order in these bankruptcy cases shall conflict with or derogate from the provisions of this Sale Order, and this Sale Order shall specifically remain in full force and effect upon any subsequent conversion or dismissal and shall in no way be modified, vacated or set aside as a result of any such conversion or dismissal.

37.     Following entry of this Sale Order, the Debtors and the Buyer may make non-material amendments and modifications to the APA or remedy any defect or omission or reconcile any inconsistency therein, in such a manner as may be necessary to carry out the purpose and intent of the sale contemplated under the APA, upon notice to be filed with the Court.

38.     All persons who hold Claims against the Debtors, insiders of the Debtors, or the Assets are forever estopped and permanently enjoined from asserting or prosecuting any Claims or causes of action against the Buyer, its affiliates, successors or assigns or any of their respective officers, directors, employees, attorneys or advisors (and any applicable Ultimate Purchasers, and their respective affiliates, successors or assigns or any of their respective officers, directors,

24

employees, attorneys or advisors), arising out of or in connection with the sale contemplated by the APA.

39.     After the Closing Date, no person or entity, including, without limitation, any federal, state or local taxing authority, may (a) attach or perfect a lien or security interest against any of the Assets, or (b) collect or attempt to collect from the Buyer or any of its affiliates (or from the Ultimate Purchasers, or any of their respective affiliates) any tax (or other amount alleged to be owing by the Debtors) (i) on account of or relating to any Claims or (ii) for any period commencing before and concluding prior to or on the Closing Date or any pre-Closing portion of any period commencing before the Closing Date and concluding after the Closing, or (iii) assessed prior to and payable after the Closing Date, except as otherwise provided in the APA and the Sale Order.  For purposes of this paragraph, any employee terminated as of the Closing Date will be deemed to have been terminated prior to the Closing Date and any claims related to such termination, if any, are Claims against the Debtors and their respective bankruptcy estates.  No bulk sales law or any similar law of any state or other jurisdiction applies in any way to any of the transactions under the APA.

40.     The combined bid of Ryan Summers, Koby Prater, Mike Stuart, Bank of Missouri and Walgreen Co. was determined by the Debtors to be the Back-Up Bid as contemplated by the Sales Procedure Order.  As such, the Back-Up Bid shall remain open and irrevocable until the Outside Back-up Date.  If Buyer fails to consummate the transaction contemplated by the APA, the Debtors shall retain the Bid Deposit of the Buyer if authorized under the APA and, regardless of whether the Debtors are authorized to retain the Bid Deposit of the Buyer, shall designate the Back-Up Bidder as the new "Prevailing Bidder," and the Debtors shall consummate an Alternative Transaction with the Back-Up Bidder without further order of the Bankruptcy Court.

KCP-8393336-9

41.    The Debtors are authorized and directed to take such actions as are necessary and appropriate to terminate the employment by the Debtors of those employees affected by the sale contemplated by the APA.

42.    To the extent of any inconsistency between the provisions of any agreements, documents, or other instruments executed in connection with the APA and this Sale Order, the provisions contained in the Sale Order will control.

43.    Time is of the essence related to the sale contemplated by the APA. Notwithstanding Fed. R. Bankr. P. 6004(h) and 6006(d), this Sale Order will take effect immediately upon entry, and Debtors may close the transaction on the Closing Date.

44.    Due to the exigent nature of the transaction, and to the extent permitted by applicable laws and regulations of the governing jurisdiction, Buyer (and/or any Ultimate Purchaser) shall be authorized to use Debtors' licenses, permits, registrations (including DEA registrations and state-law equivalents), certifications, private and government payor agreements, provider numbers, provider agreements, and agreements with pharmacy services administration organizations (collectively the "Pharmacy Permits and Agreements"), as applicable, necessary to operate the pharmacies as currently operated for a reasonable period of time pending Buyer's (or Ultimate Purchaser's) obtaining Pharmacy Permits and Agreements in its own name. Such use of Debtors' licenses and permits shall terminate as to a particular license or permit upon the earlier to occur of (a) a date which is thirty (30) days after the Closing Date unless Buyer (or Ultimate Purchaser) has submitted its own license or permit application or written notice to the applicable regulatory body; (b) a date which is seven (7) days after Buyer (or Ultimate Purchaser, as applicable) is notified that its license or permit application has been denied by the applicable regulatory body unless such denial allows resubmission and such resubmission has occurred within

KCP-8393336-9

such seven (7) day period; and (c) issuance of the like license or permit in the name of Buyer (or Ultimate Purchaser, as applicable).  Buyer (and/or any Ultimate Purchaser) shall be, and hereby is, further authorized to use the Debtors' Contract with Express Scripts, Inc. for a reasonable period of time pending either an assignment of such contract to Buyer (or Ultimate Purchaser) or Buyer obtaining its own contract with Express Scripts, Inc., with such use terminating upon Buyer (or Ultimate Purchaser) obtaining its own such contract.

45.     The Court's findings of fact and conclusions of law satisfy the requirements of Federal Rule of Civil Procedure 52 and Bankruptcy Rule 7052, made applicable to the Sale Motion and this Sale Order by Bankruptcy Rule 9014.

46.     Debtors are directed to serve a full and complete copy of this Sale Order by First Class U.S. Mail, or by personal service, upon all employees of the Debtors.  Debtors are further authorized and directed to post a full and complete copy of this Sale Order on any employee bulletin board or like display area where employee notices are regularly displayed in each of the pharmacies where the Debtors conduct business, including prominently displaying the "Special Notice to Employees of the Pharmacies Subject to this Sale" in the form immediately below. Debtors shall and promptly file a written certification of compliance with this provision.

KCP-8393336-9

| SPECIAL NOTICE TO EMPLOYEES OF THE PHARMACIES SUBJECT TO THIS SALE |
| --- |
| Unless you have been notified by the Debtors otherwise, on the Closing Date your employment with the Debtors will be terminated.  While it is the Debtors' belief that the Buyer (or Ultimate Purchaser, as applicable) will extend offers of employment to a substantial number of the employees at each store, the Buyer (or Ultimate Purchaser) is under no obligation to do so.  If you are subsequently hired by Buyer (or Ultimate Purchaser, as applicable) your employment date will commence upon the Closing Date of the sale or on such other date as you and the Buyer (or Ultimate Purchaser, as applicable) may agree.  Pursuant to the Court's Sale Order, any claims you may have arising from or relating to your employment relationship through and including your termination are claims against the Debtors and are not claims against the Buyer (or Ultimate Purchaser).  The Buyer (or Ultimate Purchaser, as applicable) is not a successor employer, and unless the Buyer (or Ultimate Purchaser) elects to hire you as of the Closing Date or thereafter, the Buyer (or Ultimate Purchaser) will not be deemed to be your employer for purposes of any applicable labor or employment law.  Employees who are not hired by Buyer (or Ultimate Purchaser, as applicable) should contact the Debtors' Human Resources Department to obtain information regarding employee benefits, if any, including COBRA. |

IT IS SO ORDERED.

 Date:  August 8, 2018                    /s/ Cynthia A. Norton
                                         CYNTHIA A. NORTON
                                         United States Chief Bankruptcy Judge

KCP-8393336-9

Submitted by:

HUSCH BLACKWELL LLP

*/s/ John J. Cruciani*
Mark T. Benedict          #44621
John J. Cruciani          #43073
Michael D. Fielding       #53124
4801 Main Street, Suite 1000
Kansas City, MO 64112
Telephone:  (816) 983-8000
Fax:  (816) 983-8080
mark.benedict@huschblackwell.com
john.cruciani@hushblackwell.com
michael.fielding@huschblackwell.com

*Attorneys for the Debtors and Debtors-in-Possession*

KCP-8393336-9